## ARNOLD v. ARNOLD.

No. 20209. Opinion Filed June 7, 1932.
Rehearing Denied July 27, 1932.

R. K. Robertson, for plaintiff in error.

John R. Miller and R. E. Stephenson, for defendant in error.

KORNEGAY, J. This is a proceeding in error to review the action of the district court of Creek county in an action brought by the plaintiff in error to set aside a deed that she had theretofore made to the defendant in error for an undivided one-half interest in her Creek allotment.

We have read the entire record. It is a revelation of family troubles arising largely from the fact that the defendant in error, when he married the plaintiff in error, thought he was marrying a Creek woman. He lived with her for several years and had three children by her, and when a relative of hers sought to enroll his children in the white school and was not able to do so, it was then discovered by the defendant below that his wife was on the freedman roll.

As soon as he could close out his business, he moved to Kansas, where a thing of that sort would not seriously interfere with education in the public schools, and kept his family at Caney for several years. According to this record, the defendant in error was thrifty and economical and hard working. After being engaged in various things, he was made marshal of Caney for some two or three years, and finally, as a result of pipe line building, he became an expert welder and drew very good wages, and according to the admitted facts in this case the family spent about what he could make, without restrictions, the wife being permitted to check practically at will, and having an unlimited credit at the various stores.

In the meantime, the question had been addressing itself to the defendant as to whether or not, his wife being on the Creek freedman roll, he could inherit by virtue of the Oklahoma law on the subject of marriage between the races. That question seems to have preyed upon him a good deal, according to the record, but he did not desert the family on that account, but evidently was trying to make the best of the situation, and trying to keep their expense bills met, the children in the meantime getting older and requiring more for education and other things accompanying it. There were times when he would grow impatient with the expense account, and letters that he wrote, poorly composed, when explained, were probably on natural lines, though the language that he used and the spelling that he employed were more forceful than elegant, and sounded harsh as compared with the stenographer's report of his language when he was before the lower court.

There runs through the testimony the idea of resentment on the one side, because of inability to furnish more, while, on the other side, the defendant appears in the attitude of having been frugal and trying to save and look out for old age. There is some resentment shown on behalf of his children, though his entire work had gone to them and to their mother, even after dissensions arose. In view of his having improved the farm and having spent what he had in the way of providing family necessities, and even more than necessities considering the surroundings, he and his wife agreed that she would transfer to him a one-half interest in the farm so improved and worked on, both apparently recognizing that there would be some difficulty, in the event of her death, in his having the status of a husband, under the miscegenation laws of this state.

Whether well founded or not, we do not deem it necessary to here decide, as the question of inheritance of the children has been recently decided in a case of that character in some respects, though not exactly parallel, as late as 1931, in the case of In re Atkins' Estate, 151 Okla. 294, 3 P. (2d) 682, wherein this court was divided as to whether or not the children would inherit from the father, who acknowledged them and with whom they were living when he died.

The deed in question was made several months before the suit was brought to cancel it, and evidently, after the deed was made, for quite a while things were running comparatively smoothly, and the man was furnishing the family with about all he could make, and a grown son and his wife were living at his home part of the time, and the girls were receiving checks. When one asked for $5, he generally sent check for $15, according to this record, until this suit was started to annul the deed on the ground of having been made under duress.

The case proceeded and both sides had their innings, and outsiders took the part of the defendant, and according to their testimony he was about as even tempered as the ordinary hardpressed father, who is struggling to keep the expense account down and the bills paid. There were no special findings of fact, and no requests for special findings, as shown by the record.

There was some contention as to how the lawyers were going to get their fees, and after the argument the record shows the following:

"The Court: Gentlemen, I have heard all of this testimony, and I want an opportunity to study the testimony before rendering my decision in the case. As has been suggested, this is one of the hardest cases for the court to decide. I am going to take this case under advisement until a week from today, the 22nd, at which time I will render my decision in the case."

At page 413, the record shows as follows:

"The Court: Gentlemen, I have given this case a great deal of thought, and I have come to the conclusion that the court would not be justified in setting this deed aside on the testimony offered in this case.

"I base my conclusion on this proposition, that she went up to Mr. Wilkinson's office and executed this deed after having it explained to her, and in the absence of the defendant in the case signed the deed, then delivered it to the defendant, and did not say anything about it to anybody, except her son, until five or six months afterwards.

"The fact that she went up there; she could have refused to have gone, and could have refused to have signed the deed. She could have called the officers to her assistance after she went up to this office.

"I just can't see, gentlemen, where any duress was practiced on the plaintiff; for that reason the court refuses to set the deed aside, and judgment is rendered in favor of the defendant.

"Mr. Robertson: To all of which findings and order of the court, the plaintiff excepts.

"The Court: Let the record show that judgment is rendered in favor of the defendant, and exception allowed the plaintiff."

This was followed by an entry of judgment, which embodied the oral declaration, with a refusal to set aside the deed and judg-

ment for costs. There was the usual motion for new trial, which was overruled, and the case brought here for our review, it being a court case or equity matter.

We have examined this record in its entirety, and we are not prepared to say that the court, under the circumstances, could well have rendered any other judgment, but so far as setting aside the judgment of the court in this case is concerned, we think that the lower court had a much better opportunity of observing the witnesses, their demeanor, their looks, their actions, their tone, and finding out what was the motive for the suit, and the impelling forces behind the various witnesses, than we have.

We recognize full well the difficulties connected with quarrels between man and wife, and that the wife very frequently is the weaker vessel, but sometimes we are bound to recognize that it is the other way, and that every case must be determined by its own particular facts in the light of its surroundings. A great many cases have been cited in the briefs, but, as stated above, each and every case stands on its own merits.

Some · complaint is made in the brief about the testimony, as to checks given and cashed being immaterial. We think that, in family economy, the fact of being able to check and the fact of checking and applying the proceeds to the expenses of the family, is one of the most important questions to be considered, and that the court did not err in taking into the account the course of dealings between the parties and the drawing of the checks.

There was sufficient evidence to warrant the finding, and we do not think it should be disturbed, and the case is accordingly affirmed.

HEFNER, CULLISON, and SWINDALL, JJ., concur. RILEY, J., concurs in conclusion. McNEILL, J., dissents. LESTER, C. J., CLARK, V. C. J., and ANDREWS, J., absent.